# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00881-COA

**EMANUEL GERARD SCHAUBHUT**                                    **APPELLANT**

**v.**

**BRENDA BLANCHARD SCHAUBHUT**                                    **APPELLEE**

DATE OF JUDGMENT:             07/25/2022
TRIAL JUDGE:                  HON. SHEILA HAVARD SMALLWOOD
COURT FROM WHICH APPEALED:    PEARL RIVER COUNTY CHANCERY
                              COURT
ATTORNEY FOR APPELLANT:       ANNA KATHLEEN RUSH
ATTORNEY FOR APPELLEE:        STEVEN J. IRWIN
NATURE OF THE CASE:           CIVIL - DOMESTIC RELATIONS
DISPOSITION:                  AFFIRMED - 11/07/2023
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., McDONALD AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.     The Pearl River County Chancery Court granted Brenda Schaubhut a divorce from Emanuel Schaubhut on the ground of adultery. On appeal from the chancellor's judgment, Emanuel argues that (1) service of process was improper; (2) Brenda misrepresented facts and committed fraud on the chancery court to obtain an inequitable distribution of the marital assets; and (3) there was insufficient evidence to prove adultery. Finding no abuse of discretion or clear error, we affirm the chancellor's judgment.

## FACTS

¶2.     The parties married in October 1995. During their marriage, they had a daughter and son, both of whom had reached the age of majority before the present litigation began. The

parties lived together until March 16, 2022, when Brenda stated that Emanuel deserted the marital home. On March 22, 2022, Brenda filed a complaint for divorce on the grounds of adultery and habitual cruel and inhuman treatment. Alternatively, she sought an irreconcilable-differences divorce. Brenda asked that the chancellor award her alimony and reasonable attorney's fees and grant her ownership of the marital residence and all motor vehicles classified as marital property.

¶3. On March 23, 2022, Brenda filed with the chancery court clerk proof of service of process to show that Emanuel had been personally served the day before with a copy of the divorce complaint and a summons pursuant to Mississippi Rule of Civil Procedure 4. The notarized affidavit that provided proof of service stated that the process server had personally served Emanuel at East Jefferson Hospital by hand delivering the divorce complaint and summons to him. The summons informed Emanuel that his response was required to "be mailed or delivered within (30) days from the date of delivery of this summons and complaint or a judgment by default [would] be entered against [him] for the divorce or other things demanded in the complaint."

¶4. Almost two months later, on May 18, 2022, the chancellor held a hearing on Brenda's divorce complaint. Emanuel failed to respond to the complaint or to appear for the hearing. The chancellor entered a final judgment in the case on the same date as the hearing. In the final judgment, the chancellor stated that she had been provided with and had viewed a video recording of Emanuel being served with process. Based on the evidence and testimony that

2

Brenda had presented, the chancellor found that Emanuel had been personally served with the divorce complaint and summons on March 22, 2022, and that Emanuel "was fully competent when he received the same." The chancellor further found that "[t]he return of the service of said summons and complaint for divorce were properly filed in the Court's record." The chancellor noted that despite receiving proper service of process, Emanuel had failed to file a response or to enter an appearance in the matter. Instead, a Facebook post the chancellor viewed had shown Emanuel and his alleged girlfriend fishing together on the day of the hearing.

¶5. After finding that Brenda had properly served Emanuel, the chancellor next considered Brenda's request for a divorce based on fault grounds. With regard to Brenda's claim against Emanuel for adultery, the chancellor stated that Brenda and a corroborating witness had both provided testimony to substantiate Emanuel's adulterous conduct. Moreover, the chancellor noted that Brenda had presented documents and video evidence to further support her claim. Based on the testimony and evidence before her, the chancellor found that Brenda had established the charge of adultery against Emanuel by clear and convincing evidence.

¶6. The chancellor also found that the parties had been married for about twenty-six years. She noted Brenda had presented evidence regarding the parties' places of employment and their annual gross incomes. After considering the difference in the parties' incomes, the length of their marriage, and the proof of Emanuel's adultery, the chancellor awarded Brenda

3

$1,200 a month in permanent alimony. The chancellor then awarded Brenda the marital residence, two automobiles, and a utility trailer. The chancellor assigned responsibility for the payment of two debts to Emanuel and ordered him to pay Brenda $2,500 in attorney's fees.

¶7.     On May 27, 2022, Emanuel filed a motion under Mississippi Rules of Civil Procedure 59 and 60 to set aside the final divorce judgment or, alternatively, for a new trial. In his motion, Emanuel did not dispute that on March 22, 2022, while he was in a hospital recovery room, Brenda and the process server arrived, and the process server served him with the summons and divorce complaint. Emanuel asserted that "his mental faculties were impaired" at the time of service. Even so, he acknowledged that "[h]e saw the papers" but "did not closely examine the papers." Emanuel stated that "[h]e put the papers in a drawer next to his recovery bed." Upon his release from the hospital, Emanuel admitted that "he put the papers in his bag," where they remained "without any further scrutiny" from him. Emanuel claimed "[h]e did not think the papers were important" because he thought "that if a lawsuit was filed[,] there would have been a court date on the papers," but he had not seen any such date.

¶8.     Emanuel asserted that his motion was timely filed under Rule 59 of the Mississippi Rules of Civil Procedure and that Brenda had obtained the final divorce judgment "by fraud or at least by misconduct as defined under Rule 60 . . . ." In addition, he challenged (1) the sufficiency of the evidence Brenda had presented to prove adultery and (2) the adequacy of the chancellor's findings with regard to the distribution of the marital estate and the award

4

of permanent alimony.

¶9.     After considering Emanuel's post-trial motion, the chancellor concluded that the findings regarding "the distribution of real and personal property" and Emanuel's responsibility for the payment of "alimony, marital debts, attorney['s] fees, and court costs were proper and supported by the law and facts."  As a result, the chancellor denied Emanuel's motion.  Aggrieved, Emanuel appeals.

## STANDARD OF REVIEW

¶10.    Our review of domestic-relations matters is limited.  *Johnson v. Johnson*, 357 So. 3d 1168, 1173 (¶12) (Miss. Ct. App. 2023).  Although "[w]e review questions of law de novo[,]" we leave a chancellor's factual findings undisturbed "when supported by substantial evidence unless the chancellor abused her discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard."  *Id.* (quoting *Schmidt v. Schmidt*, 339 So. 3d 163, 174 (¶30) (Miss. Ct. App. 2022)).

## DISCUSSION

### I.     Service of Process

¶11.    Emanuel argues on appeal that Brenda failed to properly serve him with a copy of her divorce complaint and a Rule 4 summons.  Our rules state that "[a] summons and complaint shall, except as provided in subparagraphs (2) and (4) of this subdivision, be served by any person who is not a party and is not less than 18 years of age."  M.R.C.P. 4(c)(1).  In addition, a "process server" may effect personal service on a competent adult "by delivering

a copy of the summons and of the complaint to him personally . . . ." M.R.C.P. 4(d)(1)(A).

¶12. Here, the record reflects, and the parties do not dispute, that in compliance with Rule 4, Emanuel was personally served with process by a nonparty adult. Emanuel's arguments focus instead on Brenda's presence in his hospital room at the time of service and her assistance in helping the process server gain access to his hospital room to effect service. Emanuel also alleges that he was not competent enough at the moment of service of process "to understand the weight and severity of the documents [that] he was served."

¶13. Rule 4 does not speak to Emanuel's claims regarding Brenda's presence in his hospital room at the time he was served or any assistance she may or may not have provided to enable the process server to accomplish service. More importantly, however, Emanuel fails to cite to any relevant caselaw to support his allegations of error. And as "[o]ur caselaw clearly provides[,] the failure to cite supporting legal authority precludes consideration of an issue on appeal." *Green v. Green*, 349 So. 3d 1187, 1200 (¶47) (Miss. Ct. App. 2022) (quoting *Hardin v. Hardin*, 335 So. 3d 1088, 1094 (¶21) (Miss. Ct. App. 2022)).

¶14. The same deficiency (i.e., the absence of any supporting legal authority) applies to Emanuel's claim that he lacked mental competency at the time of service of process. In addition, we note that the chancellor explicitly addressed the issue of Emanuel's competence in the final judgment of divorce. In so doing, the chancellor stated that she had "viewed a video recording of the Defendant being served with the summons and complaint for divorce[,]" and she "specifically note[d] that the Defendant was personally served with the

6

summons and complaint for divorce and that he was fully competent when he received the same." Thus, upon review, we find no basis upon which to reverse the chancellor's determination that service of process was proper.

¶15. Emanuel also repeatedly implies in his appellate brief that after service of process was completed, Brenda had an additional duty to informally notify him of the exact date of the hearing—especially because she knew his phone number and home address. But because Emanuel also acknowledges that the Mississippi Rules of Civil Procedure contain no requirement for Brenda to provide such notice, we decline to further address these assertions. *See Simmons v. Simmons*, 58 So. 3d 1239, 1243 (¶13) (Miss. Ct. App. 2011) (affirming the chancellor's finding that the husband failed to "file an answer or enter an appearance in the matter and was not entitled to three days' notice of the divorce hearing").

## II. Fraud, Misrepresentation, and Misconduct Under Rule 60(b)

¶16. Emanuel next asserts that Brenda gained "an unfair distribution of the marital assets" by misrepresenting certain facts and the parties' assets to the chancellor. According to Emanuel, the doctrine of unclean hands should preclude Brenda from any equitable relief because she obtained the divorce and an inequitable distribution of the marital estate "by fraud, misrepresentation, and misconduct[] as outlined in Rule 60(b) . . . ." Rule 60(b)(1) establishes that upon a party's motion, "the court may relieve [the] party or his legal representative from a final judgment, order, or proceeding" based on "fraud, misrepresentation, or other misconduct of an adverse party . . . ." M.R.C.P. 60(b)(1). "We

7

review the denial of a motion under Rule 60(b) only for an abuse of discretion." *McChester v. McChester*, 300 So. 3d 1035, 1039 (¶16) (Miss. Ct. App. 2020).

¶17. Integral to both this assignment of error and the next is Emanuel's repeated challenge that neither a transcript of the divorce hearing nor any exhibits are preserved in the record to support Brenda's complaint or the chancellor's judgment. Mississippi Code Annotated section 93-5-17(1) (Rev. 2021) states that "[t]he proceedings to obtain a divorce shall not be heard or considered nor a judgment of divorce entered except in open court. . . . Any judgment made or entered contrary to the provisions of this section shall be null and void." Although Emanuel correctly points out that the record here provides no indication that a transcription of the divorce hearing was ever made, we have previously held "there is no language in [section 93-5-17(1)] that requires a transcription of an uncontested divorce hearing." *Simmons*, 58 So. 3d at 1244 (¶19) (citing *Luse v. Luse*, 992 So. 2d 659, 662 (¶8) (Miss. Ct. App. 2008)). Rather, "[t]he only requirement is that there is sufficient and corroborated proof presented at the hearing." *Id.*

¶18. As we have explained, "[a] defendant is not required to answer the complaint in a divorce matter[,]" but "the divorce complainant must prove the allegations of his or her complaint even when the defendant has failed to answer." *Luse*, 992 So. 2d at 661 (¶7). "In all uncontested divorce cases, except irreconcilable differences, the testimony of the Plaintiff must be substantially corroborated." UCCR 8.03. Here, the chancellor noted in the divorce judgment that Brenda and another witness had "provided sworn testimony" and that Brenda

8

had submitted "documents and video evidence" to substantiate her claims. Moreover, the chancellor's judgment "confirmed that [Brenda had] presented testimony and corroborating evidence" sufficient "to prove her grounds for divorce and equitable distribution in open court." *Luse*, 992 So. 2d at 662 (¶9).

¶19. "'There is a presumption that there is sufficient evidence to sustain a decree' once the chancellor enters it." *Green*, 349 So. 3d at 1196 (¶36) (quoting *Luse*, 992 So. 2d at 662 (¶9)). Where, as here, a party complains about the absence of a transcript of the proceedings, "Mississippi Rule of Appellate Procedure 10(c) addresses the procedure to be followed . . . ." *Luse*, 992 So. 2d at 662 (¶8). "[T]he appellant is to prepare a statement of the evidence or proceeding 'from the best available means, including recollection.' If there is any conflict as to what occurred at the hearing, the matter is submitted to the chancellor for decision." *Id.* (quoting M.R.A.P. 10(c)). "Under Rule 10(c), [Emanuel] should have tried to find out what happened in the proceeding, presented his understanding to the appellee, and submitted any conflict to the chancellor." *Id.* He failed, however, to follow this procedural rule that afforded him the opportunity to create a record on appeal, and the record now before us contains no evidence to demonstrate that Brenda obtained the divorce judgment by fraud, misrepresentation, or other misconduct. As a result, we cannot say that the chancellor abused her discretion by denying relief under Rule 60(b) on these grounds.

### III. Proof of Adultery

¶20. In his final assignment of error, Emanuel claims that Brenda lacked sufficient

9

evidence to prove adultery. Emanuel's challenge to the sufficiency of Brenda's proof renews his claim that the record contains no hearing testimony or evidence to support the chancellor's judgment. As already discussed, Emanuel failed to respond to Brenda's complaint, appear for the hearing, or follow the guidelines set forth in Appellate Rule 10(c) for attempting to create a record for appeal. We therefore decline to further address his argument regarding the deficiencies of the contents of the appellate record before us.

¶21. As to Emanuel's assertion that Brenda failed to sufficiently prove adultery, our caselaw holds that "[i]n Mississippi[,] one seeking a divorce on the grounds of adulterous activity must show by clear and convincing evidence both an adulterous inclination and a reasonable opportunity to satisfy that inclination." *Guinn v. Claiborne*, 352 So. 3d 646, 650 (¶12) (Miss. Ct. App. 2022) (quoting *Gerty v. Gerty*, 265 So. 3d 121, 131 (¶36) (Miss. 2018)). Although Emanuel failed to answer the complaint or appear at the hearing, Brenda still had to present sufficient corroborating evidence to prove adultery. The chancellor found she met her evidentiary burden when she not only testified about Emanuel's adultery but also provided a corroborating witness, documents, and a video to further substantiate her claim. The chancellor therefore entered a judgment of divorce for Brenda on the ground of adultery, and as we have noted, a presumption exists "that there is sufficient evidence to sustain a decree once the chancellor enters it." *Green*, 349 So. 3d at 1196 (¶36) (internal quotation mark omitted). Emanuel has failed to overcome this presumption, and upon review, we can find no clear error or abuse of discretion arising from the chancellor's determination that

10

Brenda established her right to a divorce based on adultery.

## CONCLUSION

¶22.    Because we find no abuse of discretion or clear error, we affirm the chancellor's

judgment.

¶23.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR.**