ISHEE, J.,
for the Court:
¶ 1. Following a March 2013 trial, the Lafayette County Chancery Court granted a divorce to Gail Gillespie Reed from Jimmy C. Reed Jr. on the ground of desertion. Due to a variety of circumstances, Jimmy and his attorney, Joe D. Pegram, did not appear at the trial. Hence, a hearing was held without them and a judgment was entered against Jimmy as to the grant of divorce, as well as the division of marital assets and financial obligations. Jimmy now appeals, claiming the judgment should be set aside, but only with regard to his financial obligations, and the case should be remanded to the chancery court for a hearing where both parties may present their financial conditions to the chancery court. Finding error as to the division of property, we reverse and remand this case for a new trial.
STATEMENT OF FACTS
¶ 2. Jimmy and Gail were married in 1980. During their marriage, they had three children, all of whom had reached the age of majority and were emancipated by the time the instant proceedings began. At some point prior to 2012, the parties separated. On January 6, 2012, Gail filed for divorce on the grounds of adultery, habitual cruel and inhuman treatment, desertion, and, alternatively, irreconcilable differences. In his answer to Gail’s complaint, Jimmy denied that Gail was entitled to a divorce on any ground except for irreconcilable differences. Jimmy also counterclaimed that he was entitled to a divorce on the ground of habitual cruel and inhuman treatment. However, he agreed to move forward only on the ground of irreconcilable differences.
¶ 3. After a contentious discovery period, Jimmy requested that the case be set for trial on May 20, 2013, which the chancery court allowed. However, due to extenuating circumstances, Jimmy and Pe-gram did not attend the trial. In his brief on appeal, Pegram notes that Chancellor Edwin Roberts had been diagnosed with multiple serious medical conditions. Pe-gram explains that he was under the distinct impression that Chancellor Roberts would not be able to attend the trial on May 20, 2013. He asserts that he was told by numerous sources that Chancellor Rob *452 erts was being treated for his medical conditions out of the State and that Chancellor Roberts’s cases had been reassigned to Chancellor Glenn Alderson. The record indicates that on April 30, 2013, Pegram visited Chancellor Alderson’s office to have him sign an order of continuance, as the new judge on the case. However, while Chancellor Alderson had been assigned many of Chancellor Roberts’s cases, he indicated to Pegram that a substitute judge may be assigned to his case but to wait on the order of continuance. Pegram so firmly believed that Chancellor Roberts would be unable to attend the trial that he faxed a letter to his opposing counsel in the case on May 8, 2013, stating he was certain there would be no trial on May 20, 2013.
¶ 4. Nonetheless, there was not a notice issued by the chancery court indicating that the trial would be rescheduled or that it would be reassigned. Thereafter, Chancellor Roberts appeared in court for the trial on May 20, 2013, as did Gail and her attorney. Jimmy and Pegram did not appear. When it became clear that Jimmy and Pegram were not going to attend the trial, Chancellor Roberts held the court in recess while his office attempted to call Pegram. The record reflects that all calls made to Pegram’s office indicated that the telephone was off the hook. Chancellor Roberts’s office also attempted to reach Pegram by telephone at his home. However, no one answered and a voice message was left. Pegram states that while he was at his office all day on May 20, 2013, his phone line was not working.
¶ 5. Hence, the chancery court allowed the trial to proceed. Gail presented physical evidence and testimony regarding the parties’ financial conditions and the events leading up to the divorce. At the close of the trial, Chancellor Roberts granted Gail a divorce on the ground of desertion. He further ordered that Jimmy pay Gail $500 per month in alimony, which he had been paying in temporary support, until her death or remarriage, $15,000 in a lump sum for Gail to purchase a new vehicle, and $1,500 in a lump sum for Gail’s court costs and attorney’s fees.
¶ 6. Upon learning of the judgment by means of a fax sent by Gail’s attorney, Pegram filed a motion for rehearing on May 21, 2013. There, he requested that the chancery court revisit the case at a hearing in which Jimmy could present his financial condition to the court to prove he could not meet the financial requirements imposed in the judgment. The motion also noted the reasons why Jimmy and Pegram did not attend the trial. Finally, the motion stated that the judgment was inequitable and, thus, erroneous.
¶ 7. On May 22, 2013, the chancery court denied the motion for rehearing. Chancellor Roberts stated that his office had attempted to contact Pegram at his office and at home for an hour before continuing with the trial. The order also noted that Jimmy had failed to indicate to Chancellor Roberts at any time before the trial that a continuance may be needed. Hence, the chancery court asserted that it had to allow Gail to proceed with her case.
¶ 8. On appeal, Jimmy does not contest the entry of divorce on the ground of desertion. However, he requests that the default judgment be set aside and the case remanded for a new trial. He asserts that the judgment regarding the parties’ financial obligations must be remanded since the chancery court failed to reference the Ferguson[1] factors in its analysis. Finding error as to the property division, we reverse and remand this case for a new trial.
*453 DISCUSSION
¶ 9. It is well settled that appellate courts are bound by a limited standard of review in domestic-relations matters. See, e.g., Ferguson v. Ferguson, 639 So.2d 921, 930 (Miss.1994). A chancellor must have been manifestly wrong or clearly erroneous, or have applied an erroneous legal standard, for a judgment to be overturned. Montgomery v. Montgomery, 759 So.2d 1238, 1240 (¶ 5) (Miss.2000).
¶ 10. The Mississippi Supreme Court in Lee v. Lee (Lee II), 78 So.3d 326, 328 (¶ 7) (Miss.2012), stated that “[a] divorce judgment entered when a party fails to appear is a special kind of default judgment. And to obtain relief from such judgments, absent parties are required to raise the issues in post-trial motions.... ” (Quotation marks omitted). Lee was first presented on appeal to this Court in Lee v. Lee (Lee I), 78 So.3d 337 (Miss.Ct.App.2011). There, the defendant, Corey Lee, filed for divorce. Id. at 338 (¶ 2). Though he was initially represented by an attorney, his attorney eventually withdrew from the case, and Lee represented himself pro se. Id. Lee failed to attend the trial, and did not enter the courtroom until the chancellor was issuing his ruling from the bench. Id. The chancellor entered a judgment in favor of Lee’s wife with regard to child custody, child support, and division of the marital property. Id.
¶ 11. Lee filed a motion to vacate the divorce judgment the day after the trial. Id. at (¶ 3). In his motion, he provided medical explanations as to why he was so late in arriving to the trial. Id. He also attached a copy of a receipt from a pharmacy showing where he had purchased medication to help alleviate his medical symptoms. Id. However, he did not provide any argument or evidence as to why the judgment should be vacated. Id. He only addressed his reasons for why he did not participate in the trial. Id.
¶ 12. Immediately thereafter, Lee hired an attorney to file a post-trial motion on his behalf. Lee II, 78 So.3d at 327 (¶ 4). The motion specifically challenged the chancellor’s judgment and asked that the judgment be vacated. Id. at 328 (¶9). The motion asserted that the evidence was insufficient to support the judgment and that the judgment was inequitable. Id. at 328-29 (¶¶ 9, 13). However, Lee’s motion did not include any direct reference to the Ferguson factors, nor did it challenge specific evidence presented at trial. Lee I, 78 So.3d at 339 (¶ 10). A hearing took place on the motion, at which point Lee’s attorney argued orally that the chancellor failed to make findings of fact and conclusions of law per Ferguson. Lee II, 78 So.3d at 328 (¶ 9). Following the hearing, the chancery court denied both post-trial motions. Id. at (¶ 4).
¶ 13. Lee quickly filed an appeal following the chancellor’s ruling. Lee I, 78 So.3d at 338 (¶ 4). On appeal, Lee did not contest the grant of a divorce or the chancery court’s decision to try the case in his absence. Id. Rather, Lee argued that the chancery court failed to issue proper findings to support the awards of child custody, child support, and equitable distribution of the marital assets as required by Ferguson. Id. He also asserted that the findings were not supported by sufficient evidence. Id.
¶ 14. In our analysis on appeal, we relied heavily on our findings in Luse v. Luse, 992 So.2d 659 (Miss.Ct.App.2008). Lee I, 78 So.3d at 340 (¶ 8). In Luse, we held that a party may not defend a case for the first time on appeal. Luse, 992 So.2d at 663 (¶ 12). The facts in Luse are similar to those in Lee with one distinct exception — the defendant, John Luse, failed to timely file a post-trial motion and raised all pertinent issues for the first time *454 on appeal. Id. Luse also did not answer his wife’s complaint for divorce, and, like Lee, did not appear for the trial. Id. at 661 (¶ 4). The chancellor issued a default judgment against Luse, which Luse appealed on the ground that the chancellor committed manifest error by failing to make findings of fact and conclusions of law as required by Ferguson. Id. at 663 (¶ 12). Having found that the defendant’s assignment of error was procedurally barred, we stated:
Without waiving the procedural bar, we find that on the merits, Mr. Luse is correct in stating that there were no specific findings made in the chancellor’s order regarding the property distribution. However, there is a presumption that sufficient evidence was heard to sustain a decree once it has been entered. No evidence was presented by Mr. Luse to counter this presumption of correctness. Accordingly, we find no error.
Id. at (¶ 13) (citation omitted).
¶ 15. In our Lee analysis, we relied on Luse in concluding the following:
While [Lee] did timely file two post-trial motions, he did not raise the same issues he now seeks to advance on appeal. [Lee]’s initial pro se motion to vacate the judgment offered only an explanation for his failure to appear and a request that the court vacate the divorce judgment. It was followed by a Rule 59 motion, filed with the assistance of counsel, that proffered evidence to contest the chancellor’s awards of child support and equitable division. With a few exceptions, neither of these motions attacked the evidence presented at the trial or the chancellor’s findings of fact, as [Lee] now seeks to do on appeal.... [Lee] has not attempted to show that his post-trial motions should have been granted, and on appeal he appears to have abandoned the contentions made there. The record reveals no basis for this Court to conclude the chancellor abused his discretion in denying [Lee]’s post-trial motions.
Lee I, 78 So.3d at 340 (¶ 10). Subsequently, we found that Lee was procedurally barred from raising his arguments on appeal because they had not been specifically put forth in either of his post-trial motions. Id. at 340-41 (¶¶ 10-11).
¶ 16. After granting certiorari, the supreme court reviewed our judgment in Lee and reversed both this Court’s judgment and the chancery court’s judgment. Lee II, 78 So.3d at 327 (¶ 1). There, the supreme court addressed the factual distinction between Luse and Lee regarding Luse’s failure to timely file a post-trial motion and the consequences. Id. at 329 (¶ 9). The supreme court noted:
[U]nlike John Luse, Corey Lee raised the issue before the chancellor. In his Rule 59 motion, [Lee] argued that the division of marital property was inequitable. At the hearing on the motion, [Lee]’s attorney specifically argued that the chancellor had failed to make findings of fact and conclusions of law, as required by Ferguson. Therefore, [Lee] is not procedurally barred from raising this issue on appeal.... Here, the chancellor referred to Ferguson by case name in his ruling from the bench, but he never applied the factors, nor did he make findings of fact and conclusions of law. In the chancellor’s final decree of divorce, he made no mention of Ferguson or its guidelines.... The fact that [Lee] failed to attend the divorce trial does not relieve the chancellor of his duty to base his decision on the evidence, regardless of by whom presented, nor did it nullify this Court’s mandate in Ferguson.
Id. at 328-329 (¶¶ 9,11,13).
¶ 17. Similarly, in the case before us, the chancellor made mention of the *455 Ferguson factors only in passing during his ruling from the bench. The chancellor’s bench ruling consisted of the following, in its entirety: “I’m going to grant the relief requested by the wife verbatim. If it becomes necessary, I’ll enter a finding of Ferguson factors and the other things involved.” However, the chancellor did not mention Ferguson at all in his written judgment of divorce, nor did he provide any explanation or analysis that would support the findings listed in the judgment. Additionally, the evidence presented at trial was not mentioned in the judgment. Rather, the judgment, with regard to distribution of the marital assets and alimony, simply reads:
That the Husband shall pay unto the Wife the sum of Five Hundred Dollars and Zero Cents ($500.00) as permanent alimony on the 15th day of each and every month until her death or remarriage.
[[Image here]]
That the Husband shall continue to provide automobile insurance for the Wife for the remainder of her life. Additionally, the Husband shall pay unto the Wife Fifteen Thousand Dollars and Zero Cents ($15,000.00) for the purchase of a vehicle.
[[Image here]]
That the Husband shall reimburse the Wife $1,500.00 for court costs and attorney's] fees.
[[Image here]]
That the Husband shall indemnify Wife for any debts, expenses, costs, and attorney's] fees the Husband incurred in the Wife’s name and without her knowledge in the form of alimony or equitable distribution of marital assets.
¶ 18. Hence, since Reed raised the issue of inequity in his post-trial motion and the chancellor failed to support his findings with any analysis, discussion, or mention of the Ferguson factors or the evidence before him, this case is postured for remand. Furthermore, due to the unfortunate passing of the chancellor shortly after his judgment was issued, we must remand the case for a new trial since the current chancellor should be afforded a first-hand account of all relevant facts and evidence. Accordingly, we reverse the judgment of the chancery court as to the property division only, and the case is remanded for a new trial. In all other respects, the judgment is affirmed.
¶ 19. THE JUDGMENT OF THE LAFAYETTE COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED IN PART, AND THIS CASE IS REMANDED FOR A NEW TRIAL. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT AND ONE-HALF TO THE APPELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. ROBERTS, J., NOT PARTICIPATING.

. Ferguson v. Ferguson, 639 So.2d 921 (Miss. 1994).